**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MICHAEL H.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 2:25-cv-514

Sargus, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Michael H. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, which Defendant disputes. For the following reasons, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I. Background**

On September 7, 2021, Plaintiff filed an application for child's insurance benefits, alleging disability beginning October 12, 1995. Plaintiff's applications were denied initially and on reconsideration.

On May 15, 2023 and during a supplemental hearing held on January 17, 2024, Plaintiff appeared with counsel at a hearing before Administrative Law Judge ("ALJ") Jeannine Lesperance. A vocational expert and impartial psychological expert also appeared and testified during the supplemental hearing. On March 5, 2024, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. The

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was born in 1995 and was 0 years old on the alleged disability onset date.[2] (Tr. 30). Plaintiff has at least a high school education, no past relevant work, and did not engage in substantial gainful activity since turning 22. (Tr. 21, 30).

Based on the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairment: "autism spectrum disorder." (Tr. 21). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). The ALJ further determined that prior to attaining age 22, despite his impairments, Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> the claimant could perform simple tasks without a production rate pace such as an assembly line; interact occasionally with coworkers and supervisors on matters limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution, but work duties should not require interaction with the public; and adapt to occasional changes that are demonstrated or explained.

(Tr. 23). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of hand packager, kitchen

[2] As noted by the ALJ, under Section 202(d) of the Social Security Act, to be entitled to child's insurance benefits the claimant must have a disability that began before age 22. (Tr. 19). Because the claim in this case was filed after Plaintiff turned 22, the ALJ noted that the earliest potential onset date for benefits was in October 2017. The ALJ further noted that evidence before and after this date was considered to the extent that reasonable inferences could be supported regarding the claimant's functioning on that date. (Tr. 20).

helper, and cleaner. (Tr. 31). The ALJ concluded that Plaintiff was not disabled prior to turning 22. (Tr. 32).

In formulating the RFC, the ALJ considered the prior administrative medical findings of the state agency consultants, Janet Souder, Psy.D. and Kristen Haskins, Psy.D., who opined that Plaintiff could carry out simple (1-2 step) and occasional complex/detailed (3-5 step tasks), maintain attention, make simple decisions, and adequately adhere to a schedule. They further determined that Plaintiff would need a relatively isolated workstation and supervisory support when first learning job tasks; was limited to performing tasks that required no more than superficial interaction with others; could perform tasks that required infrequent changes and no strict production quotas; and would require supervisory support with goal setting and planning. (Tr. 103-104).

The ALJ found the opinions persuasive in part, finding that they were somewhat supported, but not entirely consistent with the record. In particular, the ALJ determined that the opinions were inconsistent with the opinions of Allison Podczerwinsky, Psy.D. and Nicole Marinez, Psy.D., as well as Plaintiff's school records. (Tr. 28). The ALJ found that Plaintiff's school records, while showing some deficits, generally demonstrated that Plaintiff "was reported to be doing well or adequately in a general education environment with his primary support being extra time." (Tr. 22).[3]

[3] The ALJ noted that the records indicated Plaintiff's strengths in many areas of language skills, as well as having good relationships with adults and other typical social responses, including laughing in response to jokes, standing within a comfortable distance with others during conversations, offering assistance to others, seeking friendships, refraining from saying embarrassing or hurtful things to others, and listening to others talk about their problems. (Tr. 22, 358). The ALJ further noted Plaintiff's appropriate behavior in an one-on-one assessment, that Plaintiff rated most social skills as "very easy for him," and a teacher found the same areas to be somewhat easy to difficult. (Tr. 22). With respect to his adaptive and managing behavior, the ALJ noted records regarding his daily activities including his ability to understand and follow safety protocols at home, watch television, read, participate in band, and perform basic chores. Finally, the ALJ determined that Plaintiff's school assessment was persuasive "insofar as it identifies some difficulties, such as difficulties with changes to his routine, and anxiety, but characterizes them as mild to moderate." (Tr. 30).

Dr. Podczerwinsky completed a medical source statement in May 2023 and opined that Plaintiff had no limits in understanding, remembering or applying information, and mild to moderate limitations in the remaining domains. In support of her assessment, she noted "conflicting self-reports, limited treatment, strong academic testing, and the possibility that [Plaintiff's] home environment after high school had limited his ability to maintain or achieve new gains in abilities." (Tr. 29, 408). According to Podczerwinsky, Plaintiff could perform simple to moderate job duties, decision making duties, and interactions with others.

Dr. Martinez testified at the January 17, 2024 hearing and opined that Plaintiff had mild limits in understanding, remembering, and applying information, with moderate limitations in the remaining domains. Martinez noted Plaintiff's high IQ and academic achievement scores, average to above average functioning compared to his peers, and his enjoyed engagement and activities with others (as opposed to isolation), as well as his daily activities, which included taking out the trash, washing dishes, loading the dishwasher and cooking simple food in the microwave. (Tr. 46-48). Based on her review of the entire record and Plaintiff's testimony, Martinez assessed the following limitations: occasional public interactions, no tandem work tasks as a primary functioning of a job but would not limit proximity to coworkers and supervisors; is capable of self-paced end of day daily work quotas; a production line pace would not be ideal, but would not limit the complexity of the tasks; with occasional changes to the physical work environment. (Tr. 24, 49).

The ALJ found Podczerwinsky and Martinez's opinions well-supported and generally consistent with Plaintiff's school record, which the ALJ found to be the most relevant and "in depth contemporaneous evidence of his abilities before the period in

which disability much be established." (Tr. 27, 29). However, the ALJ determined that Plaintiff was more limited than either opinion, assessing further limitations on production rate, social interaction, and changes in the workplace. (Tr. 29-30). Of particular relevance in this case, the ALJ did not adopt the consultants' limitations concerning supervisory support or an isolated workstation.

Plaintiff contends that the ALJ misunderstood the nature of Plaintiff's "high functioning" autism diagnosis and improperly rejected the opinions of the state agency psychologists. (Doc. 8).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Challenge to the ALJ's RFC Determination is without Merit.**

In his first claimed error, Plaintiff contends that the ALJ misunderstood the nature of his autism diagnosis and understated the severity of his social and adaptive deficits. (Doc. 8). According to Plaintiff, the ALJ erroneously focused on evidence that Plaintiff's autism was considered "high functioning" and ignored evidence that individuals with high functioning autism can have difficulty with socialization and exhibit rigidity of behavior/resistance to change. (*Id.* at PageID 456-57). Plaintiff claims that the record included significant evidence documenting how Plaintiff's autism disorder negatively impacts his ability to interact and adapt, but that the ALJ improperly discredited this evidence. Specifically, Plaintiff points to statements/evidence from Plaintiff's parents, Ryan Bernath (Plaintiff's school principal), Jeffrey Christiansen, Psy.D., and C. Christopher Fiumera, Ph.D., which he claims supported deficits in social interaction and adaptation that would exceed the ALJ's RFC. (*Id.* at PageID 455-61).

The undersigned finds no error in the ALJ's analysis. A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite his limitations." 20 C.F.R. § 416.945(a)(1) (2012). An RFC assessment must be based on all the relevant evidence in the case file. *Id.* In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)). However, the ALJ still has an obligation to consider all of the evidence before her and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio

2017), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ...").

The Sixth Circuit has found that the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion). As such, no bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). If the resulting RFC conflicts with a medical opinion, the ALJ must "explain why the opinion was not adopted." SSR 96-8, 1996 WL 374184, at *7.

The ALJ in this case properly weighed the competing evidence and adequately explained her reasoning in formulating at the RFC.

As an initial matter, although Plaintiff claims the ALJ understated his symptoms, the ALJ expressly determined that Plaintiff's autism diagnosis was a severe impairment; found moderate limitations in interacting with others, concentration, persistence, pace and adaptation; and incorporated substantial work-related restrictions to address Plaintiff's social and adaptive deficits. For example, with respect to adaptive difficulties, the ALJ restricted Plaintiff to simple tasks, without a production rate pace, and that Plaintiff could adapt to occasional changes that are demonstrated or explained. As to social restrictions, the ALJ further limited Plaintiff to no interaction with the public and only occasional

interaction with coworkers and supervisors on matters limited to the straightforward exchange of information without negotiation, persuasion, or conflict resolution. (Tr. 23).

The ALJ otherwise explicitly considered the evidence cited by Plaintiff and reasonably resolved the conflicting evidence in formulating the RFC. For example, the ALJ reviewed Dr. Fiumera's January 25, 2012 diagnostic statement noting that Plaintiff falls within the "High Functioning" end of the autism spectrum (Tr. 24-25). Although the letter indicated that Plaintiff may have difficulty with social protocol, the ALJ noted that the statement "appears to be descriptive of the diagnosis of autism rather than the claimant's own specific functional abilities." (Tr. 24).[4]

The ALJ came to a similar conclusion with respect to Dr. Christiansen's January 8, 2024 letter, noting that it contained mostly generalizations about those with high functioning autism. (Tr. 28). To the extent that it or Dr. Christiansen's July 22, 2022 diagnostic assessment contained specific opinions about Plaintiff,[5] the ALJ found that they were not well supported or consistent with records from the relevant time period. (Tr. 28, 29). The ALJ noted that the diagnostic assessment occurred many years after the period under review (before October 2017, when Plaintiff turned 22) and were "in marked contrast" to Plaintiff's school records, which demonstrated only mild to moderate problems. (Tr. 28). Because Dr. Christiansen had no contact with Plaintiff prior to October 2017 the ALJ found his opinions "poorly supported, particularly with reference to

---

[4] As argued by Defendant (*see* Doc. 9 at PageID 482 n.2), to the extent that Plaintiff relies on Dr. Fiumera's later-submitted clarification statement, that evidence does not provide a basis for reversal on substantial-evidence review because it was submitted after the ALJ's decision and is not a part of the administrative record. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Nor has Plaintiff demonstrated that a remand is warranted for consideration of the statement. (*See id.*).

[5] As noted by the ALJ: Dr. Christiansen concluded that [Plaintiff's] concentration was very poor, he had "extreme anxiety due to lack of social skills," he was "extremely poor at handling novelty" and changes, his daily activities were "far below" the norm, and his prognosis for success at work was poor. (Tr. 28).

observations made before age 22." (Tr. 29). The ALJ further noted that Christiansen did not state that he actually interviewed or tested Plaintiff himself in 2022, but instead appeared to rely on the statements of Plaintiff's father. (Tr. 28).

Finally, the ALJ also considered the testimony and evidence offered by Plaintiff's father and principal Bernath. For example, Bernath indicated that Plaintiff had struggled with large crowds, was extremely uncomfortable in small group conversations, and had anxiety when unexpected events occurred. (Tr. 22, 315-16). Plaintiff's father also testified that for a couple years after 2022, Plaintiff "would scream, cry, kick, bang on walls, break furniture and hit himself in the head." (Tr. 22, 387-88). The ALJ found that while the objective evidence does support the existence of Plaintiff having some limitations, "it does not support the degree of difficulty that Mr. Bernath now recollects, or that was reported by his father in 2022 or in connection with his disability claim." (Tr. 27). Consistent with the above analysis, the ALJ noted that their testimony was markedly at odds with Plaintiff's contemporaneous school records. (Tr. 22). The ALJ further noted that Plaintiff had essentially no course of treatment or interventions after high school and his daily activities from his school records—particularly playing in the symphonic and pep bands—are not as limited as suggested by the third-party reports. Considering the above evidence, as well as Plaintiff's testimony, the ALJ concluded that the record did not support a more restrictive RFC.

Although Plaintiff contends that the ALJ improperly credited Dr. Martinez's opinions over the above evidence, it is the sole responsibility of the ALJ to evaluate the evidence in the record and determine the RFC. *See* 20 C.F.R. § 416.946; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). In essence, Plaintiff asks this Court to find the above testimony/evidence to be more persuasive than Dr. Martinez and the limitations

she assessed. (*See* Doc. 8 at PageID 459, 461). However, as here, where there is a conflict in the medical evidence as to Plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). And the ALJ's determination must stand if it is supported by substantial evidence, regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993); *Tyra v. Secretary of H.H.S.,* 896 F.2d 1024, 1028 (6th Cir.1990). In sum, because the ALJ reasonably evaluated and weighed the conflicting evidence in this case and the decision is supported by substantial evidence, Plaintiff's first claimed error is without merit.

**C. The ALJ Properly Evaluated the Prior Administrative Medical Findings.**

In his second asserted error, Plaintiff claims that the ALJ improperly evaluated the state agency consultants psychologists opinions. As noted above, the ALJ considered the prior administrative findings of Janet Souder, Psy.D. and Kristen Haskins, Psy.D.. In relevant part, the consultants opined that Plaintiff would require "supervisory support with goal setting and planning," as well as "a relatively isolated workspace." According to Plaintiff, the ALJ erred by not including the limitations in Plaintiff's RFC or adequately explaining her decision not to do so. The undersigned disagrees.

In formulating the RFC, the ALJ must explain how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion,

which requires the ALJ to explain how she considered the supportability and consistency of the opinion. Notably, the Court's role is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

Here, the ALJ found the state agency psychological consultants' findings persuasive in part, finding the opinions somewhat supported by their review of the record, but inconsistent with Dr. Podczerwinsky's opinion, Dr. Martinez's testimony, and Plaintiff's school records. (Tr. 22, 27-28). The ALJ found the opinions persuasive to the extent the state psychologists endorsed no more than moderate limits in any domain and adopted several limitations consistent with those assessed by the consultants. This included adopting pace, workplace change, and social interaction limitations, albeit using different and/or vocationally relevant terminology. (Tr. 27-28).

However, the ALJ declined to adopt the need for supervisory support with goal setting and planning. The ALJ explained that this limitation was not necessary in light of Plaintiff's limitation to simple tasks. The state consultants opined that Plaintiff could also perform occasional complex/detailed tasks, but noted that Plaintiff may need assistance with more complex multitasking and transitioning between tasks. (Tr. 103). In other words, the restrictions were tied by the consultants themselves to possible difficulty with more complex multitasking and transitions, and the ALJ accounted for that concern by limiting Plaintiff to simple tasks and adding pace and change restrictions (that occasional changes be demonstrated or explained). In light of the limitation only to simple tasks—which the ALJ noted would also accommodate his social limitations and difficulty making changes and responding to stress—the ALJ adequately explained that, based on her review and assessment of the record, the limitation was not warranted.

The ALJ also did not adopt the opinion that Plaintiff would require a relatively isolated work station. In this regard, the ALJ explained that the limitation was inconsistent with the testimony/opinion of Dr. Martinez, who the ALJ found most persuasive and specifically opined that no proximity limitation was required. (Tr. 28). The ALJ further reasoned that the opinion/limitation was inconsistent with Plaintiff's school records indicating that he was in general education and performed well without an isolated setting, including participation in bands. In this regard, Plaintiff testified that he could usually work and focus at school, even with students all around him in the classroom. (Tr. 27, 69).

Although Plaintiff contends that Dr. Martinez is not the most credible source for the ALJ to rely on and points to evidence in the record suggesting that Plaintiff had access to a quiet place to study (*see* Doc. 8 at PageID 464-65), again, it is the ALJ who evaluates and resolves contradictory evidence in the record. *Felisky*, 35 F.3d at 1036; *Hardaway*, 823 F.2d at 928; *King*, 742 F.2d at 974. And while the ALJ found the state psychological consultants' opinions persuasive in part, an ALJ is not required to adopt every limitation assessed by a medical source or prior administrative medical finding, even when the opinion is found persuasive. Rather, as occurred in this case, the ALJ must evaluate the persuasiveness of the opinion and formulate an RFC based on the record as a whole. *See Reeves v. Comm'r of Soc. Sec.* 618 F. App'x 267, 275 (6th Cir. 2015) ("[E]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *See also Ferguson v. Comm'r of Soc. Sec.,* No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their

opinions in full"), Report and Recommendation adopted at 2019 WL 3083112 (S.D. Ohio July 15, 2019).

In this case, the ALJ properly evaluated the persuasiveness of the consultants' opinions, adequately explained the reasoning for not including the limitations, and the decision is otherwise supported by substantial evidence. Plaintiff's second claim of error is therefore without merit.

## III. Conclusion and Recommendation

Because the Commissioner's decision reflects no reversible error and is supported by substantial evidence, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MICHAEL H.,

Case No. 2:25-cv-514

Plaintiff

Sargus, J.
Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit right on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).